ELWIN S. PIPER, Respondent, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

1. NEGLIGENCE — RAILROADS — HEEDLESSNESS OF PASSENGER. Railroad companies are not liable for risks arising from heedlessness on the part of the passenger.

2. IMPRUDENCE OF PASSENGER. A man in the full possession of his senses, traveling upon a railroad train and finding himself plunged into darkness, at a moment when groping about in the car, cannot proceed with the same confidence as in the light and be regarded as a prudent man.

3. QUESTION OF FACT AS TO PRUDENCE OF PASSENGER NOT RAISED BY ASSUMPTION THAT VESTIBULE DOOR WAS BOLTED. If a passenger has the right to assume that the rule requiring the vestibule doors of a moving sleeping car to be bolted has been observed, it does not follow that he has a right to grope about in the dark without fear of consequences and that whether in so doing he acted as a prudent man is for the jury to say.

4. PASSENGER INJURED THROUGH MISTAKING VESTIBULE DOOR OF SLEEPING CAR — CONTRIBUTORY NEGLIGENCE AS MATTER OF LAW. If a passenger in a vestibule sleeping car, who is familiar with the car and in full possession of his senses, in undertaking to go into the closet during a

momentary darkness disregards the darkness, proceeds without hesitation, and by mistake opens the vestibule door instead of the closet door, and without noticing the differences between his actual and his supposed situation walks off the moving train and is injured, he is guilty of contributory negligence as matter of law.

*Piper* v. *N. Y. C. & H. R. R. R. Co.*, 89 Hun, 75, reversed.

(Argued May 4, 1898; decided June 7, 1898.)

APPEAL from a judgment of the late General Term of the Supreme Court in the second judicial department, entered August 3, 1895, affirming a judgment in favor of plaintiff entered upon a verdict, and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Hamilton Harris* and *Edwin D. Worcester, Jr.*, for appellant. The plaintiff, on his own showing, was clearly guilty of contributory negligence. (*Adams* v. *R. R. Co.*, L. R. [4 C. P.] 739; *Hickey* v. *R. R. Co.*, 14 Allen, 429; *Lafflin* v. *B. & S. W. R. R. Co.*, 106 N. Y. 136, 142; Beach on Contrib. Neg. 248; *Heaney* v. *L. I. R. R. Co.*, 112 N. Y. 125; *Purdy* v. *N. Y. C. & H. R. R. R. Co.*, 87 Hun, 97; *Oleson* v. *N. Y. C. & H. R. R. R. Co.*, 143 Ind. 405; *Manley* v. *N. Y. C. & H. R. R. R. Co.*, 18 App. Div. 420; *Vahue* v. *N. Y. C. & H. R. R. R. Co.*, 18 App. Div. 452; *Bradley* v. *Grand Trunk R. Co.*, 65 N. W. Rep. 102; *Weller* v. *Chicago, etc., R. Co.*, 120 Mo. 635; *Weston* v. *City of Troy*, 139 N. Y. 281; *Beltz* v. *City of Yonkers*, 148 N. Y. 67; *Hilsenbeck* v. *Guhring*, 131 N. Y. 675; *Halpin* v. *Townsend*, 2 City Ct. Rep. 417; *Reed* v. *Recrs. of R. & A. R. R. Co.*, 84 Va. 231, 239; *Wiwirowski* v. *L. S. & M. S. R. Co.*, 124 N. Y. 420; *Rodrian* v. *N. Y., N. H. & H. R. R. Co.*, 125 N. Y. 529; *Bond* v. *Smith*, 113 N. Y. 385; *Dubois* v. *City of Kingston*, 102 N. Y. 219; *Cordell* v. *N. Y. C. & H. R. R. R. Co.*, 75 N. Y. 330, 333; *Gonzales* v. *N. Y. & H. R. R. Co.*, 38 N. Y. 440; *Fiero* v. *N. Y. C. & H. R. R. R. Co.*, 71 Hun, 213; *Krauss* v. *Wallkill Valley R. R. Co.*, 69 Hun, 483; *Babcock* v. *Fitchburg R. R. Co.*, 140 N. Y. 308.)

*Joseph A. Burr* for respondent. The question of plaintiff's contributory negligence was properly submitted to the jury, and it was for them to say whether, under all the circumstances of the case, the plaintiff acted as a reasonably prudent man would act under similar circumstances, in proceeding to search for the door of the water closet in the dark instead of returning to the body of the car and asking the porter for a light. (*Jarvis* v. *Brooklyn El. R. R. Co.*, 40 N. Y. S. R. 825; 133 N. Y. 623; *Flagg* v. *M. R. Co.*, 17 J. & S. 251; *Dawson* v. *Sloan*, 17 J. & S. 304; *McCauley* v. *Smith*, 47 N. Y. S. R. 500; *Palmer* v. *Dearing*, 93 N. Y. 10; *Tonkins* v. *N. Y. Ferry Co.*, 47 Hun, 562; *Morrison* v. *Metropolitan Tel. Co.*, 69 Hun, 100; 144 N. Y. 703; *Newson* v. *N. Y. C. R. R. Co.*, 29 N. Y. 383; *Davenport* v. *Ruckman*, 37 N. Y. 568; *Jetter* v. *N. Y. & H. R. R. Co.*, 2 Keyes, 154; *Hart* v. *Erie R. Co.*, 3 Alb. L. J. 312; *Pettengill* v. *City of Yonkers*, 116 N. Y. 558.)

GRAY, J. The plaintiff has sought to recover damages of the defendant for personal injuries, received by him while a passenger upon one of its trains; which were attributable, as he alleges, to neglect in management. He was a passenger upon the train from Albany to New York city in the night of January 13, 1892. He had purchased a ticket entitling him to a berth in a sleeping car and took possession of it early in the evening, several hours before the car was attached to the train. The car was of the "vestibule" pattern; that being a construction, with respect to the platform, which permitted of a continuous passage from and to other similarly-constructed cars without exposure to the discomforts or perils incident to a connection by open platforms. The sections for passengers were on either side of a straight aisle; which terminated, at either end, in washrooms for the use, respectively, of men and women. Beyond the washroom was the "vestibule;" on either side of which were doors opening upon the car steps and furnishing ingress and egress to the train. On the night in question, the men's washroom was in the forward end of the car. On the

one side were the washbowls and on the other were, first, a porter's closet and, next to it, the water closet. The door of this latter closet was about in the center of the washroom. The plaintiff had entered the car at Albany by that end, which, like the rest of the car, received its light from a hanging lamp. He had frequently traveled on vestibule trains and was familiar with the sleeping car arrangements upon this and other railroads. He had occasion, after retiring for the night to his section, to go to the men's closet in this washroom and knew about its location. He was awakened in the morning by the porter, at about six o'clock, when the train was at or near Mott Haven, and, while partly undressed, again started for the men's closet. He observed that there was some light from a lamp in the center of the car and that some came through the windows of the sections, whose berths had already been made up. He testifies that, when he reached the threshold of the washroom, the part of the car where he stood was plunged into darkness and that he believed they were in the Park avenue tunnel. There was no lamplight in the washroom and none in the dome of the vestibule. He could distinguish such objects as the towels by the washbowls, but not one door from another. He proceeded on for a short distance, reached for the handle of the closet door, opened it, stepped, as he supposed, into the closet, and immediately fell off of the car and upon the track; where, after lying a while, he was picked up suffering from a fractured leg. He had opened the vestibule door, by mistake. He charges the defendant with the responsibility for the occurrence; in that the washroom was not lighted properly and that the vestibule door was not locked or bolted, and he alleges that more employees were needed to insure a proper observance of the rules in those respects. He recovered a verdict, which the General Term has sustained, and the defendant now appeals to this court; asserting that not only its own freedom from negligence was shown, but that the plaintiff was guilty of contributory negligence and that, therefore, it was error to refuse to dismiss the complaint upon the evidence.

I think that the plaintiff should have been nonsuited. If we might assume that the defendant's servants were guilty of some neglect of duty, which would impose a liability upon their employer for this accident, (a proposition about which I entertain very considerable doubt), it is clear that the plaintiff failed to use that vigilance and prudence, which it was incumbent upon him to use in the situation in which he was placed at the time. He had been a frequent traveler upon railroads and was familiar with such sleeping car accommodations as were furnished in the present instance. Upon this occasion, he was either so confident of his steps as to be indifferent as to where, or how far, they took him; or he was, from some cause or other, mentally preoccupied and oblivious of his surroundings and acted mechanically, instead of intelligently. That will not do and cannot be excused, upon such an issue. An intelligent being, as the plaintiff certainly appears to have been, when placed in that unwonted situation which results from being rapidly transported over the ground by the appliance of powerful mechanical forces and the use of such vehicles as are adapted to the purpose, cannot omit to use his senses and assume that there is no cause to be prudent and vigilant. He has the right to rely upon the performance by the railroad company of its duty to exercise the utmost degree of care and skill which human prudence and foresight can suggest in transporting him; but that does not relieve him from the duty of using his own senses of sight, hearing and perception. However great the perfection attained in the operation of railroads, a train is not absolutely a safe place, nor a normal situation for a person. Railroad companies are not insurers of the safety of travelers. When they have done all that human skill, prudence and foresight suggest, in the way of precautions and of a safe roadbed, of suitable passenger cars and of such proper mechanical appliances as are required in the operation of a train, they cannot be required to do more. Such risks as arise from heedlessness on the part of the passenger cannot be foreseen and if the railroad company is to be liable for them, then, indeed, it becomes an insurer of the safety of its passengers

This accident was not attributable to defects in any of the appliances or machinery designed for the operation of the train. It happened, simply, because, put in its briefest form, the plaintiff, not regarding the darkness of the moment, opened the wrong door of several and walked out of the car, instead of into a closet. Was the company bound to foresee and to provide against such an extraordinary occurrence and such heedless conduct? Practically put, the question is this: Can a man in the full possession of his senses, traveling upon a railroad train and finding himself plunged into darkness, at a moment when groping about in the car, proceed with the same confidence as in the light and be regarded as a prudent man? The question seems to answer itself.

Of course, the plaintiff insists that whether he contributed to the result by his acts, was a question upon the facts for the jury to decide. The argument, in effect, is that if he had the right to assume that the rules would be observed and, therefore, that the vestibule door was properly bolted, then he had the right to grope about in the dark without fear of consequences and whether he acted in so doing as a prudent man is for the jury to say. I cannot find any authority for that in the cases and I think that reason refuses its approval to such a proposition. If the fact was, and we must under this verdict so assume, that the light was out in the washroom, either from its sudden extinguishment or by inattention, and the sudden entering of the train into the tunnel left the plaintiff in darkness, he had two courses open to him. He could wait for the light to be renewed; or he could try to reach the closet door without any sufficient light to guide him. What he said he did was to step out, without any hesitation, to open the door that he came to and to continue on in perfect confidence and that, thus, he fell off of the car. There were several circumstances, which should have, more or less forcibly, made a man with his wits about him notice his situation; especially one so familiar as the plaintiff was with the car arrangements. When he crossed the threshold of the washroom, from the car aisle, he had about only two and one-half feet to go to be opposite

the door knob of the men's closet. Dividing the floor of the car from that of the vestibule platform was a sill of some nine inches in width, with a total difference in height of the floors of about four inches, and the former was carpeted, while the latter was covered with a rubber mat. The vestibule door was divided into two parts; each some thirteen inches in width and united by projecting hinges on the inside, which permitted the door, upon being opened, to fold upon itself. Finally, upon opening the door, there was all the change from the atmosphere of the car to the peculiar atmosphere of a tunnel, and of a foggy and rainy morning. The absence of mind, which deprived the plaintiff of his ability to notice all these remarkable differences in the situation, might well have permitted him to fumble with the latch, or bolt, of the vestibule door without any awakening of his senses.

I think that we must hold, as matter of law, that the plaintiff was guilty of contributory negligence, in utterly failing to use that prudence which was especially incumbent upon him under the circumstances of the situation. The darkness called upon him to use it and had he done so, the accident could not, within any reasonable probability, have happened. A person, whose power of vision is temporarily obstructed by some supervening condition, should take the greater care and should, if it be possible, await its passing away. If he neglects to proceed cautiously, he must accept the consequences of his undue precipitation. The following cases, among others, will suffice as more or less pertinent illustrations: *Lafflin* v. *Buffalo, etc., R. R. Co.* (106 N. Y. p. 142); *Heaney* v. *L. I. R. R. Co.* (112 id. p. 125); *Hilsenbeck* v. *Guhring* (131 id. 674).

Therefore, without discussing at all the question of whether the defendant was shown to have been guilty of some neglect, I think, upon the plaintiff's own showing, that he was himself negligent and that it was error to refuse to dismiss his complaint and to submit the case to the determination of the jury.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

All concur.

Judgment reversed, etc.