may be entered in accordance with the provisions of the Code of
Civil Procedure applicable in such cases.

The order appealed from should be reversed, and an order entered
in accordance with the views above expressed, with $10 costs and
disbursements of the appeal to the appellant. All concur.

---

(96 App. Div. 575.)

### STACK v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. July 6, 1904.)

1. RAILROADS—CROSSING ACCIDENT—CONTRIBUTORY NEGLIGENCE.

A pedestrian who waited at a crossing for a train to pass, and then went
on a further track, and was killed by a train from the other direction—
there being a clear view of the tracks for several hundred feet in the di-
rection from whence the train on the further track came—was guilty of
contributory negligence, precluding recovery.

2. SAME—NEGLIGENCE—FAILURE TO OPERATE SAFETY GATES.

Where a pedestrian waited at a crossing for a train to pass, and then
went on a further track, and was killed by a train from the other direction,
the fact that the safety gates were up, and not being operated, was of no
avail to plaintiff, in an action for the death.

Appeal from Trial Term, Oneida County.

Action by Elizabeth Stack, as administratrix of the estate of one
Stack, deceased, against the New York Central & Hudson River Rail-
road Company. From a judgment for plaintiff, and from an order
denying a new trial, defendant appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS,
HISCOCK, and STOVER, JJ.

Lewis, Watkins & Titus, for appellant.

D. F. Searle, for respondent.

STOVER, J. Plaintiff's intestate was killed at or near the cross-
ing of the defendant's road over Mill street, in the city of Rome.
The defendant's tracks and the street at Mill street are nearly at
right angles. There are four tracks at this point; Nos. 1 and 2 be-
ing used for passenger trains, No. 3 for west-bound freights, and No.
4 for east-bound freights. At a point 17½ feet south of the center
line of track No. 1, a train could be seen for a distance of 1½ miles
as it approached the crossing from the east, and the tracks were
straight for 2 or 3 miles beyond that point. At a point 25 feet south
of the center line of track No. 1, a train approaching from the west
could be seen for a distance of 850 feet, at 20 feet south it could be
seen for a distance of 1,075 feet west, and from a point 10 feet south
a train could be seen approaching from the west for a distance of
2,100 feet on track No. 1. There is a slight curve to the south a
short distance east of Mill street. The accident occurred on Febru-
ary 26, 1902, in the evening. Stack, the intestate, lived in the neigh-
borhood, and was familiar with the location. The testimony of a

¶ 1. See Railroads, vol. 41, Cent. Dig. § 1063.

witness introduced by plaintiff was that he saw the deceased on Mill street, and at the time a passenger train was passing eastward. When last seen by this witness, the deceased was standing near the gateman's shanty. The east-bound train had not yet passed over the crossing. A west-bound passenger train was passing over the crossing at or about the same time that a portion of the east-bound train was upon the crossing. The body of Stack was found a few feet west of the east sidewalk of Mill street, between the sidewalk and the driveway. There was some testimony given on the part of the defendant which tended to show that the deceased was walking upon track No. 2. The theory of the plaintiff is that Stack attempted to cross as soon as the east-bound train had cleared the crossing in front of him, and was struck by the west-bound train. The contention of the defendant is that he was walking upon the track at a point about from 120 to 150 feet east of Mill street, and was there struck by the train and carried or thrown to the point where the body was discovered. The only mark of violence upon the body was upon the head, the back of the skull being crushed in. The evidence tended to show that at the time of the accident the gates at the crossing were up. The gate tender, having been obliged to temporarily leave his post, had placed another man in charge to operate.

The trial court was requested to charge:

"That, if the plaintiff's intestate approached the crossing from the direction as claimed by Coleman [the only witness upon the subject], he was bound, as matter of law, to wait until the east-bound train had passed, so that he could get a view of the west-bound track, before he proceeded to cross the tracks, and, if he failed to wait until he could so see, that he cannot recover."

The court refused this request, and the defendant duly excepted.

Before the jury retired, the stenographer, at the request of the plaintiff's attorney, read the foregoing request, and plaintiff's attorney then stated:

"My notion is that that first request is right; that is, it is a question for them to find whether it was his duty, as a reasonable, prudent man, to do that. The Court: Do you want me to change the form of my charge? Plaintiff's Counsel: Yes, sir. The Court: The counsel asks me to change the form of my charge, and leave it to the jury to say whether, as a reasonably prudent and cautious man, under the circumstances, it was his duty to wait for the train to get by. I will modify my refusal so it may stand in that way. Defendant's Counsel: And your honor declines to charge as requested? The Court: I decline to charge in the form of the request. But I do charge in that way."

To which an exception was taken.

A juror then asked:

"How do we understand this last charge? That this man was a prudent man— The Court (interrupting): By the charge as modified, it is left to you to say whether, as a reasonably prudent and cautious man, under the circumstances, he was bound to wait until the east-bound train got by."

There was a verdict for the plaintiff, and a motion for a new trial, which was denied.

We think the defendant was entitled to the charge as requested, and that if the deceased did go upon the west-bound track without waiting, after the east-bound train had passed, to see whether a train

89 N.Y.S.—8

was approaching on the west-bound track, the plaintiff was not entitled to recover.

No importance can be attached to the fact that the gates were up, as it was notice to him that they were not being operated against trains passing at that time, and he had no right to rely upon their being open as evidence that the track was clear. While in some cases it may be that a failure to close the gates is an indication to people desiring to cross that trains are not approaching, yet it would seem that this can hardly be applied to the case of a foot passer upon the highway, who by the most common and ordinary means of observation can ascertain the approach of trains. It may be that people approaching with vehicles and animals, which require their attention to handle and manage, or those who have not opportunity to observe the trains, would be excused for their failure to observe a train, by a reliance upon the closing of the gates. This is only an application of the ordinary rule that people should exercise such care as the circumstances ordinarily require. But it can hardly be said that a passer upon the highway, who, knowing that trains are frequently passing, and that they are liable to pass at any point upon the tracks, with a clear and unobstructed view for miles in one direction, and hundreds of feet in the other, but without looking, at a point where he had full opportunity of discovering any peril that might exist by reason of passing trains, yet fails to make any observation, has exercised that ordinary care and prudence which every person is bound to exercise. The deceased must have known that, during the interval he was waiting for the east-bound train to pass, a west-bound train might be in the vicinity, and an almost casual observation of the west-bound tracks must have disclosed to him the approach of the train by which he was killed. This much is upon the theory of the plaintiff, but beyond this is the testimony adduced by the defendant as to the position of the man upon the tracks, and which seems to be borne out at least in some respects. This testimony, if different deductions might fairly and impartially be made from it, would warrant the submission of the questions to the jury, but the plaintiff in this case is bound to show affirmatively that the deceased was free from contributory negligence. The evidence, fairly interpreted, it seems to us, shows that he must have stepped upon the tracks without making any observation to discover whether there was a train approaching from the east or not. Had he made any observation, he could not have failed to discover the approach of the train; and it is no excuse to say that the noise of the east-bound train, or such circumstances as ordinarily follow the operation of trains, distracted his attention. If the ordinary circumstances are such as to distract, then his observation should have been proportionately guarded and increased. It was his duty not only to observe, but to make his observation effectively, so far as the circumstances permitted. "A person whose power of vision is temporarily obstructed by some supervening condition should take the greater care, and should, if it be possible, await its passing away. If he neglects to proceed cautiously, he must accept the consequences of his undue precipitation." Piper v. N. Y. C. & H. R. R. Co., 156

N. Y. 224, 50 N. E. 851, 41 L. R. A. 724, 66 Am. St. Rep. 560; Heaney v. Long I. R. R. Co., 112 N. Y. 122, 19 N. E. 422. The case of Heaney v. L. I. R. R. Co., supra, has never been overruled, and the expressions of the court in McNamara v. N. Y. C. & H. R. R. R. Co., 136 N. Y. 650, 32 N. E. 765, expressly recognize the correctness of the decision of the Heaney Case upon the facts there presented. The case under consideration differs quite materially in its facts from the case of McNamara v. N. Y. C. & H. R. R. R. Co., supra, and the latter case cannot be said to be controlling.

We think that the plaintiff failed to show a condition which excused the deceased from looking before attempting to cross the track, and he is therefore within the rule holding that one who, with opportunity to observe under circumstances in which an ordinarily prudent person would observe, yet fails to make the observation which would insure his safety, is guilty of such negligence as to preclude a recovery.

The judgment should be reversed upon the law and facts, and a new trial granted, with costs to appellant to abide the event. All concur; HISCOCK, J., in result.

HISCOCK, J. I concur in a reversal of the judgment appealed from, upon the ground that the evidence, by its controlling weight, if not as matter of law, not only fails to establish that the intestate was free from contributory negligence, but, upon the other hand, indicates that he was guilty of it. The testimony of plaintiff's witness Coleman is absolutely essential to establish plaintiff's right to recover. He is the only witness relied upon to prove that the intestate did observe proper care and caution. He testifies that he had stopped upon Mill street south of the railroad crossing, and that intestate, in approaching the tracks, stopped upon the same side thereof, near the flagman's shanty, which was about 6 feet southerly from the southerly track; that at this time the east-bound train was passing over Mill street; and that as, after standing there, the witness started on again, the intestate also started to cross the railroad tracks. The gauge of each track was 4 feet 8 inches, and the distance between tracks was 7 feet 3 inches, so that the distance of intestate's starting point by the shanty was nearly 20 feet from the west-bound track, upon which he is claimed to have been struck. The crossing of Mill street by the east and west bound trains, respectively, is naturally a matter of great importance in this case, and Coleman is the witness upon whose testimony plaintiff must rest. He varies somewhat in different portions of his testimony as to the instant when the west-bound train came upon the crossing, with relation to the instant when the east-bound train left it. But the substance of his evidence, when he is called upon to weigh his words most carefully, is that the west-bound train certainly came upon the crossing by the time the east-bound train was clear of it, and that this occurred about as he was starting from his standing and waiting position. Remembering that intestate started from his position by the flag shanty, about 20 feet distant, just as the witness started, it seems to me incredible that the intestate could have got upon the

track in front of the west-bound train after the necessary passage of the east-bound train, if he had exercised the slightest observation. Of course, the witnesses for the defendant give evidence indicating that he was not killed in any such way as is claimed by plaintiff, while attempting to make the crossing. But I disregard their evidence, as presenting an issue for the jury, and base my conclusions upon that of the plaintiff's own witness. The west-bound train is said by some of plaintiff's witnesses to have been going at the rate of 50 to 60 miles an hour, and Coleman's attention was attracted by the roar of its approach. His detection of its approach was subject to any difficulty caused by the noise of the east-bound train as much as intestate's, and the evidence makes it apparent that, if the latter had exercised a slight measure of care, he could not have got upon the track in front of the west-bound train, close as it must have been after the passage of the east-bound train over the crossing, without knowing of its approach.