WEILL v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. December 21, 1911.)

1. SHIPPING (§ 166*)—FERRYBOATS—INJURY TO PASSENGER—CONTRIBUTORY NEGLIGENCE—EVIDENCE.

In an action for injury to a ferryboat passenger who stepped into an open coal chute, evidence *held* insufficient to show freedom from contributory negligence.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 166.*]

2. CARRIERS (§ 323*)—PASSENGERS—INJURIES—LIABILITY.

Transportation companies are not liable for risks arising from heedlessness on the part of passengers.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1346; Dec. Dig. § 323.*]

3. SHIPPING (§ 166*)—FERRYBOAT PASSENGERS—CARE REQUIRED OF.

If the place where plaintiff alighted from a coach on a ferryboat was dark, she was bound to use greater care than if it was light.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 166.*]

4. NEGLIGENCE (§ 122*)—PERSONAL INJURIES—CONTRIBUTORY NEGLIGENCE—PROOF REQUIRED.

In personal injury cases, there must be affirmative proof of absence of contributory negligence.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 221–223, 229–234; Dec. Dig. § 122.*]

Hirschberg and Rich, JJ., dissenting.

Appeal from Trial Term, Richmond County.

Action by Friederika Weill against the City of New York. From a judgment for plaintiff and from an order denying a new trial, defendant appeals. Reversed, and new trial granted.

---

Argued before JENKS, P. J., and HIRSCHBERG, BURR, CARR, and RICH, JJ.

Clarence L. Barber (Theodore Connoly, on the brief), for appellant. Adam K. Stricker, for respondent.

BURR, J. On May 22, 1910, defendant operated a steam ferry between St. George, Staten Island, and the borough of Manhattan. On that day plaintiff, with three other ladies, were occupants of a coach which was driven upon one of the ferryboats while lying in the slip at St. George. The team gangways were on the main deck, and, for a portion of the distance, on either side of an inclosure in the center of the boat occupied by the engine, furnaces, and boilers. Between this inclosure and the stern of the boat, and midway between the two gangways, was a coal hole or chute, through which the necessary fuel for the furnaces was dumped into the bins. This chute was a litttle more than 4 feet long, and a little more than 2½ feet wide. It was not flush with the deck. Around it there was a wheel guard 1 foot wide and 4½ inches high. Between that and the opening there was a steel coaming about four inches higher than the wheel guard. This coal hole was 68½ feet from the stern of the boat. The main deck for a part of the intervening distance was covered by the overhang of the saloon deck above. The terminus of a line drawn perpendicularly from the extreme edge of this overhang to the main deck would be a point 43 feet and 10 inches from the said coal hole. There were canvas wind shields at the bow and stern of the boat. While those at the bow were closed, they were nearly 200 feet distance from the chute. Those at the stern were not drawn. Just before the coach in which plaintiff was riding was driven upon the boat, the cover of the coal chute was raised to permit the dumping of coal into the bins, and had been left open. When the coach had stopped in the gangway, plaintiff and her companions alighted to go to the ladies' cabin, which was on the opposite side of the said gangway from the chute. It does not clearly appear from plaintiff's testimony from which side of the coach she alighted. It would seem probable that it was upon the left-hand side, as, if she had alighted upon the right-hand side, she must have walked away from, instead of toward, the cabin in order to reach the opening. Plaintiff is unable to tell how far distant from the coal chute the rear wheel of her coach was when it stopped. She says that she took one or two steps, not more. One of the witnesses called by her estimates the distance to have been three feet. A witness called for defendant estimates the distance to have been considerably more. After alighting from the carriage, plaintiff walked along and stepped into the opening and fell, sustaining injuries for which a jury, by its verdict, have said that defendant was liable.

[1] We think that the judgment in this case must be reversed upon the ground that plaintiff has not shown herself to be free from negligence contributing to the injury. It affirmatively appears from her own testimony that, before she got out of the carriage, she did not look either to the right or to the left; that she did not look in front

of her to see if there was anything there. There was no evidence that anything existed which prevented her from seeing this open hole if she had looked. It is true that one of her witnesses testified that the place was "dark." Darkness is a relative term, and the word "dark" may have little probative force unless the extent of the darkness is indicated. The accident happened at about half past 4 o'clock in the afternoon of the 22d of May, on a clear day, when the sun was shining. Although there is evidence of the extent of the overhang of the upper deck, there is no evidence of its height above the main deck. It certainly must have been sufficiently high to permit the passage under it of large trucks and vehicles, and it could not, under the admitted circumstances of the case, have cast any shadow on the opening sufficient to obscure it. The point where plaintiff alighted was not in that portion of the gangway between the cabin and the engine room, which may have been somewhat darker. The only witness called by her as to the accident testified that he was in the coach behind the one in which she was riding, yet he saw the coal hole, saw that the cover was up, saw the top of the coal in the chute, saw plaintiff step out of the carriage, saw the wheel guard (he calls it a base) four or five inches above the deck, saw plaintiff step upon this, and then into the opening. If he could see all these things, there was no reason why plaintiff could not have done so if she had been in the least attentive. In order to get her foot into this opening, she must have raised it more than four inches to the top of the wheel guard, passed it over this guard, one foot in width, and raised it again four inches to clear the steel coaming on the side of the chute. That she could have done this unconsciously can only be explained upon the ground that, as she herself testified, she "paid no attention to it." There is no evidence that there was anything unusual in the location of the coal chute. Necessarily there must be some appliances for supplying a boat with fuel. We think that the court may take judicial notice of the fact that this chute was located in the place where such appliances are usually to be found on ferryboats. While it was not unlawful for plaintiff to alight from the carriage and walk over the deck, yet this deck and the place where the coal hole was situated were not primarily intended for that purpose, and it was incumbent upon plaintiff to exercise a greater degree of care than if she had been walking upon the sidewalk of a city street, or the platform of a railroad station.

[2] Transportation companies are not liable for risks arising from heedlessness on the part of the passenger. Piper v. New York Central & Hudson River R. R. Co., 156 N. Y. 224, 50 N. E. 851, 41 L. R. A. 724, 66 Am. St. Rep. 560.

[3] If the place where plaintiff alighted was in fact dark, it was incumbent upon her to use greater care. Brugher v. Buchtenkirch, 167 N. Y. 153, 60 N. E. 420; Dailey v. Distler, 115 App. Div. 102, 100 N. Y. Supp. 679; Lather v. Bammann, 122 App. Div. 13, 106 N. Y. Supp. 790. It is quite clear that she exercised none at all.

[4] We have been recently reminded that the rule which requires affirmative proof of the absence of contributory negligence on the

part of a plaintiff is not to be ignored in actions to recover damages for personal injuries. Mastin v. City of New York, 201 N. Y. 81, 94 N. E. 611, 33 L. R. A. (N. S.) 784.

The judgment and order appealed from should be reversed and a new trial granted, costs to abide the event. All concur, except HIRSCHBERG and RICH, JJ., who dissent.