---

(83 Misc. Rep. 645)

### FAERBER v. 969 PARK AVE. CO.

(City Court of New York, Trial Term.  January 15, 1914.)

1. NEGLIGENCE (§ 31*)—STATUTORY DUTY—FAILURE TO LIGHT HALLS.

   Under Tenement House Law (Consol. Laws, c. 61) § 76, requiring the owner of every tenement house to keep a light at night in the public halls and near the stairs thereof, and Laws 1912, c. 13, defining a tenement house as including apartment houses, the owner of an apartment house is negligent in failing to maintain the required light.

   [Ed. Note.—For other cases, see Negligence, Cent. Dig. § 50; Dec. Dig. § 31.*]

2. NEGLIGENCE (§ 68*)—CONTRIBUTORY NEGLIGENCE.

   Where a person goes into an unlighted apartment house with an employé of the owner, and, without requesting such employé to lead him out with the lantern used in entering the building, attempts to find his own way through a darkened hallway without the assistance of any light to enable him to reach his destination, he is negligent, precluding his recovery for injuries.

   [Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 92, 94, 95; Dec. Dig. § 68.*]

Action by George J. Faerber against 969 Park Avenue Company. Judgment for plaintiff, and defendant moves for a new trial.  Motion granted.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Blumenthal & Levy, of New York City, for plaintiff.
Robert M. McCormick, of New York City, for defendant.

FINELITE, J. This is a motion made by the defendant to set aside the verdict as rendered by the jury upon all the grounds stated in section 999 of the Code of Civil Procedure, and for a new trial. The action was brought to recover damages for injuries received through the negligence and carelessness of the defendant and its agents, arising out of the following facts, which are stated in substance: It appears that the defendant was the owner of the premises known as 969 Park avenue, New York City, which was a new building erected by the defendant, and which was almost in completion and ready for occupancy by tenants, that it had therein electric light and gas fixtures, and that a tenant was about to move into said premises, but which light was not in use at the time the injuries to the plaintiff were received. It appears further from the facts herein that the superintendent of said premises, who had sole charge thereof, on or about the 26th day of September, 1912, went to a furniture store and ordered an iron couch and mattress to be delivered and placed in his room in said house on said day. The plaintiff, with a helper, arrived at the premises shortly after 6 p. m., and they were met by the superintendent, who directed a man under his direction, one Degnon, to show the plaintiff and his helper where to deliver the couch and mattress. Degnon had a lighted lantern in his hand, and led the two men through the various halls and rooms until they finally reached the room where the couch and mattress were directed by the superintendent to be delivered. Degnon was requested by the plaintiff to sign the receipt book for the couch and mattress, but he told the plaintiff that he had no authority to do so, but that he could go out to the superintendent and get it signed. The plaintiff thereupon walked through said halls to reach the outer office where the superintendent was waiting, but before he reached the office, in walking slowly through said hall, fell down a flight of stairs into an opening located in said hall, within 5½ inches from the hall flooring, and received the injuries complained of. The plaintiff on direct examination further testified that he "walked right up to get the receipt book signed; that was all, and I fell down these stairs. I didn't know they were there. That is all I done. I tried to hug the wall a little, and all of a sudden I went down. As I walked along it was so dark that once in a while I would bump my elbow and then all of a sudden I thought I was right, and I went down the stairs. That is all I done. Before I left the room where I delivered the bed and mattress I asked this man for the receipt book to be signed. He told me I would have to take it out and see the superintendent. There was no light in the hall, and I, therefore, could not see the stairs," and that the injuries that plaintiff received were to his left side, where his body struck the stairs, also to his temple; that he suffers continuous headaches; that his eyes were black and blue and closed; that his wrists were strained a little; that his eyes remained closed for five or six days, and were black and blue during that time, and that he had consulted a doctor, who attended him about the injuries, and made several visits to the doctor; that the

plaintiff still complains of pains in the head, which pains continue to date, and was unable to go back to work for seven days after the accident, and was again obliged to cease working for a period of three days on account of severe pains in the head, and thereafter resumed his work. On cross-examination the plaintiff testified that he asked the person who had the lantern to sign the book; that he said he had no authority to sign; that the superintendent had to sign, and he asked him where the superintendent was, and he told him that he was outside—

"and I left the room; he did not tell me to wait till he would show me the way out. He told me the superintendent would sign the book. I went out of the room slowly, and went through the hallway the way you would go through any hallway. It was dark, and I went through it slow, and I had the receipt book in my hand, and I walked a number of paces, and the first thing I knew I fell. I went straight ahead along the hall. I took no turn. I did not hear this man say when we carried the bed and mattress into the superintendent's room to 'Look out, that there is a stairs there!' He did not say it. I did not hear him say anything of the kind to me, or to my man that was helping me carry the mattress."

This is the substance of the evidence in reference to the manner in which the plaintiff walked and fell into this open space and received his injuries.

[1] The defendant contends that the plaintiff has not only sustained the burden of proof of his freedom from contributory negligence, but, on the other hand, on his own testimony, he has shown himself to be guilty of the grossest kind of negligence, and argues from the following standpoint: That this was the first visit that the plaintiff made to these premises, and that on entering the building he was carrying a bed cot on his back, it being pitch dark in the building, except for the light cast from the lantern in the hands of the defendant's employé; that the plaintiff had no knowledge of this flight of stairs down which he subsequently fell before the actual moment of falling, although he passed very close to it on his way into the room where he was to put the cot. After he had placed the cot in the room where it was to go, he asked the defendant's employé if he would sign the receipt. His own words as to what transpired are in substance as hereinbefore stated. Thereupon he left his helper with the defendant's employé in the room, and started out alone to find the superintendent. The hall was pitch dark, and he did not know where he was to find the superintendent. He took it upon himself to go about searching in a building which was pitch dark, about which he knew nothing whatever, and in which he had only been once, at which time his attention was otherwise occupied than in seeing and determining the lay-out of the building. He walked through a passageway, bumping his elbows against the wall, it was so dark, and the next thing he knew he had fallen down this flight of stairs.

The defendant contends as a matter of law that a person may not come into an unfamiliar place and wander about, not knowing into what trap he may fall; that where a man enters a dark building he is called upon to use the highest degree of care, and to use any means within his power to insure his safety, and cites to support his conten-

tion Rohrbacher v. Gillig, 203 N. Y. 413, 96 N. E. 733; Brugher v. Buchtenkirch, 167 N. Y. 153, 60 N. E. 420; Hilsenbeck v. Guhring, 131 N. Y. 674, 30 N. E. 580; Weller v. Consolidated Gas Co., 198 N. Y. 98, 91 N. E. 286, 139 Am. St. Rep. 798; Baumler v. Wilm, 136 App. Div. 857, 122 N. Y. Supp. 98; Donnelly v. Katz, 133 App. Div. 905, 117 N. Y. Supp. 644; Lather v. Bammann, 122 App. Div. 13, 106 N. Y. Supp. 790; Schindler v. Welz & Zerweck, 145 App. Div. 532, 130 N. Y. Supp. 344—which, he argues, hold to the effect that a person who visits an apartment house on business, in which the halls were not lighted, and tried to pass along a dark hallway, and falls down a flight of stairs, cannot maintain an action against the owner because the attempt of the visitor to pass along a strange hallway without being able to see where he is going, *unless under some special stress of circumstances,* constitutes contributory negligence. From an examination of these authorities the facts herein seem to be similar to the facts stated in the cases here above cited.

In Rohrbacher v. Gillig, supra, the facts were that the plaintiff entered a building for the purpose of going to an upper floor, but he passed the stairway and went on through a dark hallway, and eventually fell into an elevator shaft. In that case the Court of Appeals found that the plaintiff was guilty of contributory negligence, saying:

"If he was unable to perceive existing conditions, then inability imposed upon him the duty of exercising the greatest caution, or of refraining from proceeding further in the building without first finding out where he might safely go."

This observation was made in the case of Brugher v. Buchtenkirch, 167 N. Y. 153, 60 N. E. 420. In that case the plaintiff, also, continued past a flight of stairs leading to the upper stories and to a hall, which was unlighted, and fell down some steps. The judgment there recovered by the plaintiff was reversed by the court of last resort upon the authority in Hilsenbeck v. Guhring, supra, and in Piper v. N. Y. C. & H. R. R. R., 156 N. Y. 224, 50 N. E. 851, 41 L. R. A. 724, 66 Am. St. Rep. 560.

The principle which these decisions have established is that a person coming into such an unfamiliar situation, where a condition of darkness renders the use of his eyesight ineffective to define his surrounding, is not justified, in the absence of any special stress of circumstances, in proceeding further without first finding out where he is going and what may be the obstruction to his safe progress. In Kenney v. Rhinelander, 28 App. Div. 246, 50 N. Y. Supp. 1088, affirmed 163 N. Y. 576, 57 N. E. 1114, and in Brown v. Wittner, 43 App. Div. 135, 59 N. Y. Supp. 385, the First Department held that it was not contributory negligence, as a matter of law, for a plaintiff to use the stairways and halls of a semipublic character in the absence of a light, even where they knew of defects in the carpets or matting; and a like doctrine was held by the Second Department in Lee v. Ingraham, 106 App. Div. 167, 94 N. Y. Supp. 284; Mr. Justice Bartlett writing:

"It was said in the Lather Case, supra, that the violation of the provision of section 82 of the Tenement House Act (Laws of 1901, ch. 334) afforded evidence sufficient to justify a recovery."

The case turned, as here, upon the question of contributory negligence, and a great stress was laid upon the fact that when—

"he walked out of the dining room he knew that the hall was dark, yet he deliberately shut the door and excluded what light there was from his apartment, knowing that the door of the bathroom and the stairway were immediately adjoining." "The darkness of the hallway," says the court, "which caused the accident was thus brought about by his own act in excluding the light from the dining room, which would have enabled him to see the door to the bathroom without exposing him to the risk of falling down the stairway. * * * "

In this case the learned Appellate Division was divided whether under the rule which requires *that where different inferences may be drawn from the facts,* it is for the jury to decide under proper instructions, and not a question of law for the trial judge to pass upon. This case is pointed out, not as bearing, entirely upon the issues involved herein, but being analogous to the question whether a person walking through a dark hallway, falling into an open space and being injured, should not, under the circumstances, be submitted to a jury as a question of fact to be decided by them, and not as a question of law by the court (Piper v. N. Y. C. & H. R. R. R., 156 N. Y. 224, 50 N. E. 851, 41 L. R. A. 724, 66 Am. St. Rep. 560; Parsons v. N. Y. C. & H. R. R. R., 113 N. Y. 355, 21 N. E. 145, 3 L. R. A. 683, 10 Am. St. Rep. 450. The authorities upon this question seem to be somewhat conflicting, in some instances holding that it is contributory negligence for a person to walk along a dark hallway, and, irrespective of using his elbows, to feel his way in the darkness; it was his duty to hesitate then and there to avoid falling into an open pitfall and being injured, and if he attempts to proceed, no matter how cautiously he may act, and should come to an opening and fall therein and receive injuries, that he is, under such circumstances, guilty of contributory negligence as a matter of law. From the examination of all the authorities that I can find upon this subject it seems that the Court of Appeals has finally concluded that the principle which these decisions have established is that a person coming into such an unfamiliar situation, where a condition of darkness renders the use of his eyesight ineffective to define his surroundings, is not justified, in the absence of any special stress of circumstances, in proceeding further without first finding out where he is going and what may be the obstructions to his safe progress. Rohrbacher v. Gillig, 203 N. Y. 413, 96 N. E. 733; Hilsenbeck v. Guhring, 131 N. Y. 674, 30 N. E. 580; Weller v. Consol. Gas Co., 198 N. Y. 98, 91 N. E. 286, 139 Am. St. Rep. 798; Baumler v. Wilm, 136 App. Div. 857, 122 N. Y. Supp. 98; Donnelly v. Katz, 133 App. Div. 905, 117 N. Y. Supp. 644; Lather v. Bammann, 122 App. Div. 13, 106 N. Y. Supp. 790; Schindler v. Wellz & Zerboeck, 145 App. Div. 532, 130 N. Y. Supp. 344.

As a question of fact arose from the evidence whether or not the superintendent of said premises directed the plaintiff to deliver the couch and mattress in his room, and that an employé of the defendant with a lantern led the plaintiff into and along said hall, which was in darkness, and after the delivery of said couch and mattress directed the plaintiff where he could have the receipt book signed, and the su-

perintendent, as well as the employé of the defendant, denying this fact, the case was thereupon submitted to the jury upon the conflicting question of fact to be decided by them under a charge of the law as laid down by the court, to which no exception was taken, and the court in its charge stating that if the plaintiff, under all the circumstances, acted carefully and prudently to avoid being injured, and that the defendant failed to supply the plaintiff with a light sufficient to enable him to see where to walk, as it was obliged to under the circumstances in compliance with the Tenement House Act, the jury awarded a verdict in favor of the plaintiff upon the facts involved herein.

[2] The defendant now contends that there was no statutory obligation upon it to provide lights in the hallway of this building, and that it was in no way negligent in failing to provide light, for the law is well settled that, in the absence of a statutory requirement, no duty devolves upon the landlord or the owner of a building to light the hallways, even though he retains control over the same, and cites Robinson v. Crimmins, 120 App. Div. 250, 104 N. Y. Supp. 1076, and Brugher v. Buchtenkirch, 167 N. Y. 153, 60 N. E. 420, and Grimmer v. Tenement House Dep't, 204 N. Y. 370, 97 N. E. 884, for the reason that, the building not being completed, and not being occupied by tenants, anyone entering the building would be presumed to have done so at his own risk, for which the defendant would not be liable. The cases cited by the defendant have been the law until the statute was amended by chapter 13 of the Laws of 1912, which went into effect on March 5, 1912, and which reads as follows:

"A 'tenement house' is any house or building, or portion thereof, which is either rented, leased, let or hired out, to be occupied, or is occupied, in whole or in part as the home or residence of three families or more living independently of each other, and doing their cooking upon the premises, and includes apartment houses, flat houses and all other houses so occupied."

So, therefore, the words "apartment house" are included within the definition of "tenement house," and the accident happened to the plaintiff on September 26, 1912, at which time the act as amended was in full force and effect, and this amendment was brought about by reason of the Grimmer Case, supra. The plans as offered in evidence, Exhibit 2, show that the premises were to be occupied by two or three families on a floor, and that cooking was to be done on the premises, because each apartment contains a kitchen; so therefore the premises in question came within the purview of the Tenement House Act. Section 76 of the Tenement House Law provides as follows:

"Public Halls. In every tenement house a proper light shall be kept burning by the owner in the public hallways, near the stairs, upon the entrance floor, and upon the second floor above the entrance floor of said house, every night from sunset to sunrise throughout the year, and upon all other floors of the said house from sunset until ten o'clock in the evening. This section shall also apply to cities of the second class. * * *"

In the absence of maintaining such a light the owner has been held to be guilty of negligence (Bornstein v. Faden, 149 App. Div. 37, at page 41, 133 N. Y. Supp. 608; affirmed 208 N. Y. 605, 102 N. E. 1099; Jones v. Ryan, 125 App. Div. 282, 109 N. Y. Supp. 156; Downs v. Brown Realty Co., 152 App. Div. 451, 137 N. Y. Supp. 327; Brown

v. Wittner, 43 App. Div. 135, 59 N. Y. Supp. 385. In the Bornstein Case, 149 App. Div. at page 41, 133 N. Y. Supp. at page 610, Laughlin, J., said:

"We are of opinion that the Legislature in enacting this statute contemplated by the use of the words 'proper light' that the light to be maintained in the lower hallways near the stairs on the entrance floor should be sufficient to light the entire lower stairway, and to enable people lawfully using the stairs, by exercising proper care, to see the steps and avoid slipping, stumbling or missing their foothold. Tested by this rule the evidence of negligence on the part of the defendants was sufficient to take the case to the jury."

But the want of light was not the proximate cause of the accident. The dangers of the situation were obvious. The plaintiff failed to await the defendant's employé to lead him out with the lantern that was used when he carried in the couch and mattress into the superintendent's room, and should not have assumed the risk of attempting to go through a darkened hallway without the assistance of some light to enable him to reach the superintendent's office; therefore the plaintiff, I have no doubt from the facts and circumstances surrounding this case, assuming the obvious risk in the manner which he did, and thereby contributing towards his own injury, this court concludes, from the reasoning as laid down by the Court of Appeals in the case hereinbefore cited, that the plaintiff in not using such precaution as he should have used under the circumstances was guilty of contributory negligence.

The motion for a new trial must therefore be granted. Settle order on one day's notice.