## JOHN L. BURKE et al.

## v.

## MAFFETT HULETT, Admr.

*Opinion filed June 23, 1905—Rehearing denied October 24, 1905.*

1. LANDLORD AND TENANT—*when landlord is liable for damages from defects.* A landlord renting premises to various tenants and retaining control of stairways, passages and halls for the common use of the tenants is under an implied obligation to use reasonable care to keep such places in safe condition, and is liable for injuries resulting from defects of which he had actual or constructive notice.

2. SAME—*proof must show that the injury was caused by defect.* Recovery against a landlord for an injury alleged to be caused by a defect on a portion of the premises under his control for the common use of the tenants cannot be sustained where there is no satisfactory proof that the injury was in fact caused by the defect.

3. APPEALS AND ERRORS—*Supreme Court cannot weigh evidence in suit at law.* Upon appeal in a suit at law the Supreme Court can not weigh the evidence which tends to show the fact of notice of a defect, nor can it wholly disregard the testimony of an unimpeached witness in determining whether there is any evidence tending to show that fact.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

FOSTER & BRADLEY, (THOMAS E. D. BRADLEY, JOHN C. STETSON, WILLIAM J. WELDON, and WILLIAM E. FOSTER, of counsel,) for appellants.

ROBERT M. MITCHELL, and JOSIAH BURNHAM, (JOHN STUART ROBERTS, of counsel,) for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This is an action brought by appellee, administrator of the estate of Sadie Harrison, deceased, against appellants, as owners of a certain building, to recover damages for the death of his intestate.

216—35

The first count of the declaration alleges that appellants were on March 30, 1901, the owners and lessors of a certain tenement house containing numerous apartments or rooms, with common passageways, landings and stairways leading through said house to the various apartments or rooms of the same, and which passageways, stairways, etc., were used in common by the various tenants of said building, and that the defendants exercised control over said stairways, passageways and landings; that it was their duty to keep said passageways, landings and stairways in reasonably good and safe repair for the purpose of ingress and egress to and from said apartments; that they neglected to keep the same in good and reasonable repair for the uses and purposes aforesaid, and on account of defects in said premises the said Sadie Harrison, while then and there walking along and upon said passageways, landings and stairways for the purpose of ingress to and egress from one of the rooms or suite of rooms in the said tenement house to the street, alley or court, as by law she had a right to do, using all due care and caution for her own safety, stepped in and upon a certain decayed and rotten board in said passageway and landing, and tripped, stumbled and fell through, upon and against one of the said decayed, rotten and insecure boards in said passageway, landing and stairway, and was then and there violently thrown forward and fell in and upon the landing there, with great force and violence, by reason whereof she was then and there hurt, cut and wounded, becoming sick, sore and disordered, and as a result of the said injury so received she died on the 31st day of March, 1901. The second count is substantially the same as the first, with the additional allegation that a portion of said premises was leased to Mary MacMiens; that one Hanratty was at the time of the accident a lodger and roomer in her apartment; that the deceased, at the time of the accident, was upon the said premises by the invitation and request of said Hanratty, and while she was taking articles of laundry into said apartment she

stepped upon a rotten and insecure board on the porch, land-ing or stairway in the said premises and was then and there injured, as a result of which she died.

To the declaration the defendants filed a plea of not guilty, and upon a trial before the court and a jury, at the close of all the evidence, they requested the court, in writing, to instruct the jury to find them not guilty, which was de-nied. The case was then submitted upon the arguments of counsel and instructions of the court, and a verdict was re-turned in favor of the plaintiff for $1000. A motion for a new trial being overruled, judgment was entered upon the verdict. An appeal was prosecuted to the Appellate Court for the First District, where the judgment below was af-firmed, and from the latter judgment this appeal is taken.

The only ground of reversal insisted upon here is, that the trial court erred in refusing to give the instruction to find for the defendants.

The following facts appeared from the evidence: On the evening of March 30, 1901, about nine o'clock, the de-ceased, an unmarried colored woman some forty years of age, engaged with her mother in carrying on a hand laundry in the city of Chicago, was seen to enter the premises de-scribed in the declaration, owned by the defendants, for the purpose of delivering laundry to one of the tenants in said building. So far as the evidence shows she was neither seen nor heard of again until the next morning, when a physician was summoned and found her lying upon a couch in a room occupied by one Hanratty, the tenant to whom she delivered the laundry. Upon examination the physician found a wound below the knee of one of her limbs, from which she was bleeding and had already lost a large quantity of blood. This physician did not attempt to give a description of the wound. She was soon after taken to her home and another physician summoned by her mother, who testified that he found a rag-ged wound some four or five inches below the knee, to the right and on the inner side, in the fleshy part of the leg; that

he probed the wound and found' it two or three inches in depth. The witness says: "I found the probe entered something like one and one-half to three inches. I am of the opinion that the wound was made by some ragged instrument,—something blunt,—some kind of an instrument that was not keen or sharp. She was·in a dying condition." He also testified that he had treated her for varicose veins in both legs, but not for six or eight months. Several witnesses testified that on the porch outside of the door to the room where she was found there was a broken board, around which there was blood, indicating that some one had broken through the floor and been injured, and the theory of the plaintiff's case is that the deceased was injured in that manner. A police officer who was called to the room that morning testified, among other things: "I entered the premises in the rear, through the court. There is a driveway a little to the rear of Burke's meat market. Between the meat market and this house there is a little porch two or three steps high from the ground in the rear. I saw a hole in the porch just as you go in the door. I saw some blood which had been swept away. Some one had swept over it. The boards in the walk were lengthwise toward the building. It looked as if one board had broken through, six inches wide, but the boards on each side of it were not broken. Only one place was broken." On cross-examination. he said: "I was called there about half-past seven in the morning. I found this man Hanratty, and I believe the doctor was there. It was Dr. Simpson,— the first witness. I know nothing about how she got hurt or what occurred except what I was told. The hole was deep enough to let a man's foot in down to the knee. The break in the porch had been swept over and I could not tell whether it was a fresh or old one." Another witness, who testified that he examined the premises with a view of making a diagram, some time after the accident, testified: "I found a hole at the rear on entering the back door of the premises occupied by MacMiens and Hanratty, This hole was covered

over with a piece of soap-box. I took off the piece of soap-box and took a piece of wood off of there that was all covered with blood. The hole was made between two stringers in the plank. The plank was rotten and there was a piece of light wood in the plank that had been broken through. There are stairs that go up to the east flat and stairs that go up to the west flat immediately off of the landing. The paper I showed you is the best I could do by way of making an accurate drawing of the rear of these premises. The piece of board was taken from there. It has been in my possession since that day. I got it after the accident. The boards in the landing were rotten, dirty and decayed. They were common, ordinary pine boards,—I should say from four to six inches wide, lying in a direction from the entrance to the door. There were two or three steps from the ground up to the landing."

The building at which it is claimed the injury occurred contains six flats, the one in which the deceased was found being rented by Mrs. MacMiens and one of the rooms sub-let to Hanratty. There were stairways, hallways and passageways in the building, which were used in common by the tenants to go to and from their several apartments, and the evidence tends to show that the place at which the broken board was found was in one of these pasageways used in common by the tenants. One ground upon which appellants claim the court erred in refusing to take the case from the jury is, that there was no proof offered tending to establish their duty to keep the place in question in repair. The law is, that where a landlord rents all of the premises to a tenant or tenants, retaining no control over any portion of the same, he is not liable to keep the property in repair in the absence of a contract or covenant to do so, and there is no duty imposed upon him to make repairs, nor is he liable to a tenant or other person for injuries resulting from a defective condition of the leased premises. (*West Chicago Masonic Ass.* v. *Cohn,* 192 Ill. 210.) But where only a portion of the

premises are rented and the landlord retains control over other parts of the same, such as stairways, passageways and halls, or where he rents the premises to several tenants, retaining control over a part of the same for the common use of the several tenants, a different rule applies. As stated in the American and English Encyclopedia of Law, (vol. 18, 2d ed. p. 220) : "The rule laid down by the weight of authority is, that where the landlord leases separate portions of the same building to different tenants and reserves under his control those parts of the building and premises used in common by all the tenants, he is under an implied obligation to use reasonable diligence to keep in a safe condition the parts over which he so reserves control. Thus, it is held by the weight of authority that an implied duty is imposed upon the landlord to keep in repair common passageways and approaches retained under his control and used by the several tenants as the means of access to the portions of the premises demised to them, and that the landlord is liable for injuries received by a tenant because of the landlord's negligence in performing this duty." The same principle is announced in *Payne* v. *Irvin,* 144 Ill. 482. In such case the landlord is liable for injury occasioned by his negligence in failing to keep the premises in repair, and, of course, he can only be charged with negligence for such failure after notice of the existence of the dangerous condition of the same, or after the defect has continued for a sufficient length of time to charge him with constructive notice thereof. On this question the testimony on behalf of the plaintiff is very unsatisfactory. A witness named Leddy testified that one of the defendants, Daniel Burke, told him about the woman getting hurt, and that "he said that was the place where Mr. Hanratty showed him where she went through. He had given orders before he went to Europe [which was before the accident] to have it fixed, but it was fixed too late." This evidence, if entitled to credit, of course tends to prove that the owners knew of the defect. The witness was posi-

tively contradicted by Daniel Burke as to the conversation, and all of the testimony in the case is to the effect that the break in the floor was not there previous to the day of the alleged accident. In fact, both counts of the declaration aver that deceased stepped in and upon a certain decayed, rotten and insecure board, etc., and broke through the same, thus clearly indicating that the theory of plaintiff's case was not that there was a hole in the floor previous to·the accident, but that the injury was occasioned by reason of deceased breaking through the same. Neither is there any evidence tending to prove that the boards were so rotten and decayed as to produce a patent defect, charging defendants with notice that the place was dangerous. The jury would undoubtedly have been justified in finding in favor of the defendants on the question of notice, disregarding entirely the testimony of Leddy, and we think the Appellate Court, having the right to weigh the conflicting testimony, might properly have reversed the judgment below on that point. In this court the question is whether there is any evidence fairly tending to support the material fact of notice. On this question we are not at liberty to weigh the evidence of the different witnesses, nor can we wholly disregard the testimony of an unimpeached witness. We cannot therefore say there is no evidence fairly tending to establish the fact of actual notice of the defective condition of the floor.

There is another ground, however, upon which we think the peremptory instruction should have been given, and that is, the absence of proof that the injury complained of was caused by the defective condition of the floor. Deceased was seen to enter the building the evening before her death by three disinterested witnesses, and they each swore positively that she did not at that time fall or meet with any accident. They said, "She entered safely—she did not fall down;" and one of them, speaking of her and Hanratty, said "they went in safely." In view of this uncontradicted testimony the only theory upon which plaintiff's case could rest would be, that

after entering the room safely deceased tried to leave it and thereby received her injury, and of that fact there is no evidence whatever. Her injury, as described by the physician, was a punctured wound some two or three inches deep, and there is not a particle of testimony in this record from which it can be inferred that such an injury could have been produced by simply breaking through a rotten and decayed floor. The physician also said that the wound appeared to have been caused by some blunt, dull instrument. Neither he nor any other witness testified that the injury might have been produced by the foot of the deceased breaking through a decayed plank. Common experience and observation teach that an injury caused by the foot and limb passing through an opening of the kind here described would produce an abrasion of the skin rather than a punctured wound of the depth described.

It is to be remarked that both MacMiens and Hanratty, who were the only witnesses present at the time, died soon after the alleged accident, and this fact doubtless accounts for much of the uncertainty in the evidence as to how the injury was occasioned. But that fact cannot relieve the plaintiff of the responsibility of proving the substantial, material facts of his case. There is a cloud of mystery surrounding the case, leaving it wholly to conjecture as to when, how and in what manner deceased received the injury which caused her death. While we are not disposed to relax the rule which makes the landlord liable for the failure to keep leased premises in repair in cases of this kind, yet the proof ought to satisfactorily show that he has been guilty of negligence in that regard and with reasonable certainty establish the fact that the injury complained of was the result of his failure to do so. The latter fact was not proved, nor, in our opinion, did the evidence fairly tend to establish it.

The judgments of the circuit and Appellate Courts will be reversed and the cause remanded to the circuit court for another trial.                    *Reversed and remanded.*