### John D. Casey, Administrator, v. William P. Adams.

#### Gen. No. 13,492.

1. LICENSEE—*who not upon premises by invitation.* One who goes upon premises without express invitation or without the implied invitation which flows from his having business with the owner or occupant of premises, is not upon the premises at the invitation of such owner so as to enable him to recover for personal injuries resulting from the negligence of such owner or occupant.

2. CONTRIBUTORY NEGLIGENCE—*upon whom burden of proof rests.* The burden of proving that one whose death is alleged to have been caused by the wrongful act of another was not guilty of contributory negligence, is upon the plaintiff.

3. HABITS OF CARE—*when evidence with respect to, incompetent.* Where the plaintiff's intestate met death through an accident which the evidence shows happened in a particular way, the presumption of negligence which ordinarily flows from a showing that the plaintiff's intestate was habitually careful does not apply.

BAKER, P. J., dissenting.

Casey v. Adams.

Action in case for death caused by alleged wrongful act.  Error to the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.  Heard in the Branch Appellate Court at the March term, 1907.  Affirmed.  Opinion filed December 6, 1907.

**Statement by the Court.**  The judgment, to reverse which this writ of error is prosecuted, was entered in the Superior Court upon a directed verdict, at the end of the plaintiff's case.  The suit was brought by plaintiff in error against the defendant in error to recover damages for the death of deceased caused, as the plaintiff in error claims, by the negligence of the defendant in error in keeping and maintaining a doorway open and unprotected leading into an elevator shaft, through which doorway the plaintiff in error's intestate stepped and fell into the shaft, receiving injuries from which he died.

The building in question is situated on the northwest corner of Wabash avenue and Congress street in the city of Chicago.  It is seven stories high, and at the time of the accident was occupied by several tenants.  For the use of the tenants defendant in error maintained and operated two freight elevators in the rear of the building, opening upon an alley.

The accident in question happened May 10, 1905, during a teamster's strike.  Some time prior to this date, the manager of the Chicago branch of the Wells Fargo Express Company requested police protection for their wagons, of the police authorities of the city, and the deceased, a police patrolman, was detailed for that purpose; and on the day of the accident he was ordered to accompany a Wells Fargo two-horse covered wagon, the sides of which were closed at this time.  The rear end was open, and the tail gate was down.  Armstrong & Co., one of the tenants of the building, had some express matter to send out, and the wagon, to guard which deceased was detailed, backed up to a doorway in the rear of the building to receive it.  The doorway was about forty feet north of Congress street.  Across the alley was the Siegel Cooper building, eight

stories in height. In Congress street opposite the end
of the alley was the Congress street elevated station.
It was a dark and cloudy day. When the wagon was
backed up to the building, it about covered the entire
doorway. All these obstructions excluded the light
from the doorway from without. No light came to
the doorway from within because there was a wall run-
ning parallel with the rear wall of the building, and
only eight feet east of it, forming the east side of an
elevator shaft. Two and one-half feet south of the
doorway was a wall running east from the rear wall
of the building, forming the south wall of the elevator
shaft. The west wall of the building formed the west
wall of the shaft. The bottom sill of this doorway
was twenty-seven inches wide and was about the same
height or slightly lower than the bottom of the wagon
bed.

When the wagon was backed up to the doorway, de-
ceased was in the wagon. He was seen to step down
from the tail gate of the wagon to the door sill, and
the next instant he disappeared into the elevator shaft,
sustaining the injuries from which he died. He left
him surviving a widow and two children.

JAMES C. McSHANE, for plaintiff in error.

FRANK M. COX and J. F. DAMMANN, JR., for defend-
ant in error.

MR. JUSTICE SMITH delivered the opinion of the
court.

The *gravamen* of the claim of plaintiff in error as
set forth in the declaration is that the deceased was not
a trespasser or naked licensee, but was on the premises
at the invitation, express or implied, of the tenant of
defendant in error, and that by reason of the failure of
defendant in error to provide a barrier for the door-
way or a light in the shaft, the deceased failed to see
where the shaft was, and as a result fell into it.

There is no material conflict in the facts shown by the evidence. Nor is there any question made that the testimony produced was not admissible under the averments of the declaration. The only question presented by the record, therefore, is whether upon the evidence produced the trial court erred in holding as a matter of law that plaintiff in error was not entitled to recover.

It is contended on behalf of plaintiff in error that the deceased was not a trespasser or a naked licensee on the premises of defendant in error, but was there at the invitation, express or implied, of the tenant of defendant in error, Armstrong & Company, and hence, plaintiff in error may complain of the negligence of defendant in error.

The evidence shows that the expressman drove his wagon around to the elevator door in question at the request of a salesman of Armstrong & Company, for the purpose of receiving goods for shipment. Police protection was necessary, a strike being in progress, and the deceased, a policeman, was ordered to go with the wagon while the expressman in charge of it was receiving, hauling and discharging goods to protect the employe's wagon, horses, harness and merchandise. He had orders to ride on the wagon. Under these conditions it is insisted that the deceased was on the premises of defendant in error, by the implied, if not the express invitation of defendant in error or his tenant.

In support of this proposition many cases are cited by the attorney of plaintiff in error which, we think, are distinguished clearly from the case at bar. As to the legal effect of an invitation to go upon the premises there is and can be no controversy. But the question is, whether an invitation was given by defendant in error to the deceased to enter upon the premises. Thus it was held in I. C. R. R. Co. v. Hopkins, 200 Ill. 122, that the fact that the plaintiff had been accustomed for a number of years to go upon the prem-

ises and deliver meals to the mail clerks was a sufficient invitation to warrant her being there.

In The John Spry Lumber Co. v. Duggan, 182 Ill. 218, an invitation was implied from the fact that the closet was provided for the use of all employes of the contractor and the defendant.

In Shonmyer v. Mann, 219 Ill. 242, the plaintiff was an employe of a tenant.

And so in Burke v. Hulett, 216 Ill. 545, the business of a laundry woman in going upon the premises to deliver laundry to the tenant was held as coming within the ordinary business of the tenants for which the building was used, and therefore an invitation was implied.

The recovery was allowed in Siddall v. Jansen, 168 Ill. 43, on the doctrine of attraction to children, and the ordinary rules as to trespassers and persons invited to enter on premises had no application.

And in Marwedel v. Cook, 154 Mass. 235, and Fisher v. Jansen, 30 Ill. App. 91, and Foster v. Portland Gold Mining Co., 114 Fed. 615, the invitation in each case was implied from the fact that the purpose of the plaintiff in being upon the premises was within the ordinary use by the tenants of the apartment buildings in question.

In Wright v. Perry, 18 Am. Neg. Rep. 461, the plaintiff, a teamster, was delivering goods to a sub-tenant of a building leased by the defendant. It appeared clearly that he had a right to be in the building to deliver the goods.

Without further reviewing the cases cited by counsel for plaintiff in error upon this subject, a majority of the court are of the opinion that in each case is to be found some fact or facts which warrant the contention that there was an invitation, express or implied. In the case at bar, however, we find no fact or facts averred in the declaration and proved by the evidence which constituted an invitation to the deceased to

enter the building of defendant in error. We find nothing in the evidence which shows that the deceased entered the premises of defendant in error in the discharge of any duty or in the pursuit of any business with any of the tenants of defendant in error. It is not pretended that deceased had any business to transact with defendant in error or any of his agents or tenants in the building. Plaintiff in error's reliance is solely upon the fact that deceased was there in his capacity as a policeman charged with the duty of protecting the team and merchandise from destruction or injury or interference by the striking teamsters or their sympathizers. His instructions were to remain with the wagon. These instruction did not require him to enter any premises unless the team and wagon were driven into the premises in the course of the business of the express company. There is not a word of evidence in the record that it was necessary or that there was any occasion to enter the premises, to protect the team, wagon or merchandise in the wagon, or the driver of the wagon from an attack from within the building; and no presumption is warranted from the facts shown in evidence that any such attack was feared or even suspected. The property he was to protect was in a public alley, and the deceased could best protect it in the alley and not in the building. There was no riot, violence or breach of the peace at that time and place, and no necessity or request from any one to enter the building appears in the evidence. But, if there had been any hostile demonstration toward the property which he was charged with protecting, or toward the driver of the wagon from within the building, and deceased had entered the building to put down or check any such demonstration, the doctrine announced in Gibson v. Leonard, 143 Ill. 182, would, in the opinion of a majority of the court, be applicable to the case, and appellee would have owed no duty to him, except to refrain from wilful and af-

firmative acts which were injurious. Hamilton v. Minn. Desk Co., 78 Minn. 3; Beehler v. Daniels, 18 R. I. 563; Baker v. Otis Elevator Co., 79 N. Y. Supp. 663; Woodruff v. Brown, 136 Ind. 431.

In Murry v. McLean, Admx., 57 Ill. 378, the deceased, a cooper, went to the defendant's place of business to deliver kegs and wandered some sixty-five or seventy feet back from the front of the building, where were situated the office and room where persons having business with the house transacted it, for assistance to help him in unloading, and there fell into an unguarded elevator shaft. The court held that no invitation was shown warranting him in going to that part of the premises and that therefore no recovery could be had.

To the same effect are Pierce v. Whitcomb, 48 Vt. 127; Flanagan v. American Glucose Co., 11 N. Y. Supp. 688; Gillis v. Penn. Ry., 59 Pa. St. 129; Pittsburg, Ft. W. & C. Ry. v. Bingham, 29 Ohio 364; Plummer v. Dill, 156 Mass. 426; and Woolwine v. C. &. O. Ry., 36 West Va. 329.

Thompson, in his work on Negligence, Vol. 1, p. 978, makes the following statement of the law as to persons who come upon the business premises of another for purposes of their own, and not for the purpose of doing such business with him as the owner invites the public to do, and the duties and obligations of the owner to such persons: "Such persons stand on the footing of trespassers or bare licensees, and, on a principle already considered, they take the premises as they find them, and if they are hurt in consequence of any defect in them, they cannot recover damages."

If the deceased had any right whatsoever in the building of defendant in error, it was, upon the evidence, only the right conferred upon him by the state in his capacity as a police officer, since he entered in that capacity and by no other invitation. Under the authorities cited above, we hold that if he was law-

fully there, he was there at his own risk, and that defendant in error was under no duty or obligation towards him to keep the elevator shaft in the building in a safe condition.

If, as a minority of the court thinks, we are in error in this conclusion, the question remains, was the deceased guilty of contributory negligence?

The testimony of Leffingwell, an agent of the express company, who during the strike went into the wagon service of the company in order to move the wagons and furnish service, is the only testimony which furnishes light upon the action of the deceased, just as he fell into the elevator shaft. The witness saw the wagon back up against the building just previous to his arrival there in his buggy. Desiring to see how much space there was in the wagon for additional freight, witness climbed up on the rear wheel on the south side of the wagon, and at that moment saw the deceased step on the tail gate of the wagon, or seemingly on the tail gate. He did not know whether the officer stepped on the tail gate or the door sill. Deceased was on the north side of the wagon and facing toward the southeast. He moved his body toward the east, toward the doorway. The witness could not tell whether deceased made more than one step sideways or not. When he made the step he was standing on the tail gate, and as soon as the side step was made he disappeared. The witness climbed over the rear wheel and stepped on the tail gate and looked down to see what had become of the deceased. He could see that it was dark and that there was no floor there. He could not see anything at the bottom of the elevator shaft because of the darkness.

The theory is advanced on behalf of plaintiff in error that the deceased slipped on the door sill, which was covered with iron, and fell into the building. Whether the theory has any basis in the evidence it is unimportant to inquire, for the negligence averred

in the declaration is the want of light and lack of bar-
rier at the elevator shaft, and that these things caused
the accident; and for the further reason that allowing
the door sill to be slippery would not be negligence
on the part of defendant in error. This theory also
implies that deceased by slipping on the door sill had
entered the premises, for the sill was inside the build-
ing. But upon that theory, the sill was twenty-seven
inches in width, and afforded ample room to stand,
if deceased used due care in stepping upon it. The
burden of proving that deceased was not guilty of
contributory negligence was upon plaintiff in error.
The testimony of Leffingwell shows that deceased
stepped sideways and a little backward toward the
door. Other evidence in the case shows that he knew
nothing of the place, its conditions, construction or
appliances. All the witnesses agree that it was dark
and almost, if not quite, impossible to see anything
inside the door. Upon these facts, about which there
is no controversy, it is impossible to conclude that de-
ceased was exercising due care. On the contrary, the
natural and common sense conclusion is that he was
negligent and that his negligence contributed to the
injury.

Plaintiff in error, however, seeks to invoke the pre-
sumption which arises in cases of death, where there
were no eye-witnesses, that due care was used, and
apply it to the facts of this case, where there was an
eye-witness; and contends that applying the rule as
to presumption of care to the case it was a question
of fact for the jury, and the presumption and facts in
evidence would warrant the jury in finding that de-
ceased was exercising due care, and that he did not
voluntarily try to enter the building.

We do not think the case is one for the application
of the presumption referred to. The jury would have
no right to apply it in considering the evidence. The
evidence shows just what the deceased did and how
the accident happened; and the question of due care

and contributory negligence must be decided from the evidence, and not upon presumption.

' The evidence, in the opinion of a majority of the court, conceding to be true all evidence which supports the view of plaintiff in error, and giving him the benefit of all legitimate inferences which are to be drawn therefrom in his favor, clearly shows that the deceased was guilty of contributory negligence as a matter of law. Jorgensen v. Johnson Chair Co., 169 Ill. 429; Browne v. Siegel Cooper &.Co., 191 *id.* 226; Murray v. McLean, Admx., *supra;* Piper v. New York Central, 156 N. Y. 224; Brugher v. Buchtenkirch, 167 N. Y. 153.

The trial court did not err in directing the verdict, and the judgment is affirmed.

*Affirmed.*

Mr. Presiding Justice BAKER dissenting.