**John F. Devine, Administrator, Appellee, v. Calumet Elevator Company, Appellant.**

## Gen. No. 16,527.

1. MASTER AND SERVANT—*safe place to work.* In order that there may be a recovery of damages for the death of an employe resulting from the negligence of the employer in failing to provide a reasonably safe place in which to work, it must be affirmatively shown that the defects complained of existed, that the employer had notice thereof or might have had by the exercise of ordinary care, that the deceased did not know of the defects and had not equal means of knowledge thereof with his employer, and that the defects were the proximate cause of his death.

2. DEATH—*proximate cause.* Where defendant's negligence in not keeping a reasonably safe place to work is alleged as the proximate cause of the death of the plaintiff's intestate, and a presumptive theory is advanced showing how the defendant's negligence caused the death, without any direct proof thereon, a finding that defendant's negligence was a proximate cause of the death cannot be sustained where there are other theories, equally plausible, showing how death might not have resulted through the defendant's negligence.

3. MASTER AND SERVANT—*assumed risk.* Where an employe, with full opportunity to observe and know the conditions around the machine at which he is working, continues his work without complaint he assumes the risk of any attending dangers.

4. MASTER AND SERVANT—*failure to guard shaft.* Where proof fails to show that it was practicable to guard a shaft and there was no statute requiring such guarding, negligence cannot be predicated thereon even though such shaft caused the death of an employe.

Appeal from the Superior Court of Cook county; the Hon. MARCUS A. KAVANAGH, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1910. Reversed. Opinion filed August 12, 1912.

CALHOUN, LYFORD & SHEEHAN, for appellant; RALPH F. POTTER and EDWARD W. RAWLINS, of counsel.

GEORGE E. GORMAN, for appellee.

MR. PRESIDING JUSTICE DUNCAN delivered the opinion of the court.

In a jury trial John F. Devine, administrator and appellee, recovered judgment in the sum of $7,500 against appellant, Calumet Elevator Company, for negligently causing the death of one John Rasmussen. The declaration charged that appellant was operating a grain elevator, in the basement of which was placed and driven a certain wheel and shaft at a rapid rate of speed; that said Rasmussen, as appellant's employe, was required to oil said machinery; that appellant negligently failed to furnish Rasmussen with a reasonably safe place in which to do his work, (1) by reason of its failure to sufficiently light said basement and machinery; (2) by reason of its permitting ice to form and remain on the basement floor where Rasmussen was required to walk and stand to oil said machinery; and (3) by reason of its failure to so guard and protect said shaft as to secure Rasmussen from contact therewith while oiling the same. Appellant pleaded the general issue.

The evidence is, in substance, that Rasmussen had been employed by appellant in its said grain elevator in South Chicago at general work from one and one-half to three years prior to his death; that at times he worked as oiler and was familiar with the basement and said machinery; that the machinery consisted of a belt wheel and shaft, the shaft being attached to and operating a screw-conveyor; that the machinery was

supported by cross pieces attached to four large upright pillars or posts set in the basement in a rectangle about three by four and one-half feet; that the belt wheel ran the shaft and was pulled by a belt running upwards into the room over the basement; that the belt wheel had two oil cups or boxes on either of its sides about four feet apart into which Rasmussen was to pour oil every hour to keep the bearings properly oiled and cooled, which cups were approached from the south and between two of said upright pillars connected by a cross timber or support about three feet from the floor and twenty-one inches from the oil boxes; that the shaft is about two and one-half inches in diameter, three feet above the floor, and extends east of and beyond said two posts through the conveyor box in which was the screw-conveyor; that the shaft was not guarded nor protected with any device that would prevent contact therewith east of the posts; that a sixteen candle power electric light was hanging and burning to the left of the belt wheel and about eighteen inches from, and right above, the left oil cup at the time of Rasmussen's death; that said machinery was contained within a space about six by twelve feet, and was near the center of the basement, which was about three hundred by one hundred feet, and lighted by six electric lights that burned day and night; that the weather was cold and the basement was covered with ice and the ice was covered with dust in the vicinity of the machinery at the time of the intestate's death; and that the basement in the vicinity of the machinery was about six feet in height and the height thereof gradually lessened to about four and one-half feet from the machinery to the stairway entering the basement about seventy-five feet away. Rasmussen was last seen alive about one o'clock on the morning of the accident as he descended the stairway into the basement to oil this machinery. About two hours later his body was

found under the elevator shaft on the floor of the base-
ment and to the right or east of said four pillars.
There was no eyewitness to the accident. His right
arm was torn from his body and wrapped to the shaft
about three feet to the right of the right oil box, to-
gether with his clothing and some waste matter ordi-
narily uséd for cleaning machinery. His body was
entirely nude, and a partition behind or just north
of the machinery was spattered with blood. His shoes
were found on the floor near the body. In removing
his arm from the shaft the first articles unwound and
removed therefrom were his pants, then his under-
clothes, and then the shirt of the deceased. The arm
of the deceased and the waste matter in the hand of
the deceased were then taken from the shaft, the waste
being the first article wound around the shaft and the
last removed therefrom.

The contention of appellant that the court erred in
refusing to peremptorily direct a verdict of not guilty
in this case must be sustained. To authorize a re-
covery against appellant for negligently failing to pro-
vide appellee's intestate with a reasonably safe place
in which to work, the appellee must affirmatively show
that the defects complained of existed, that appellant
had notice thereof or might have had by the exercise
of ordinary care, that the deceased did not know of
the defects and had not equal means of knowledge
thereof with appellant, and that the defects were the
proximate cause of the intestate's death. L. E. & W.
R. R. Co. v. Wilson, 189 Ill. 89.

It is true that the evidence shows that the deceased
was a careful employe when at work, but the evidence
undisputably shows that the same conditions and de-
fects, if any, that existed on the morning of the acci-
dent had existed in the elevator during the deceased's
employment there, and that he was familiar with them.
Furthermore, the evidence does not show what was the
actual cause of the deceased being caught and wound

around the shaft, except that the circumstances make it reasonably clear that the deceased had in the hand of his dismembered arm a handful of waste which was caught and wound around the revolving shaft, and by reason thereof his hand and arm were caught and bound to the shaft with the waste and his clothing, and while thus caught he was whirled around the shaft and killed. It is a matter of pure conjecture as to what caused the waste in his hand to come in contact with the shaft. It is the theory of appellee that by reason of insufficient light the deceased got too near the revolving shaft, or by reason of the slippery condition of the floor, due to the presence of ice, he slipped and fell against the shaft, and got his hand caught. There is not a single circumstance in the record, except the mere presence of ice on the basement floor and which was covered with dust, that tends to prove that the deceased slipped and fell against the shaft. The deceased may have been caught on the shaft by any one of a number of causes for which appellant was in no way responsible, as by accidently stumbling or swooning and falling against the shaft, or by attempting to wipe the shaft with the stringy waste that was found in his hand. Therefore, it can not be said that there is any evidence fairly tending to show that the intestate came to his death by reason of the presence of an icy floor or for want of sufficient light, because such findings can not be supported by mere conjecture. Appellee could not recover legally without affirmative proof that the negligence charged caused the death of Rasmussen. Steffen v. Ill. Steel Co., 140 Ill. App. 551; Burke v. Hulett, 216 Ill. 545; A., T. & S. F. Ry. Co. v. Alsdurf, 68 Ill. App. 149; Patton v. Texas & Pac. Ry. Co., 179 U. S. 659.

In the last case above cited it is aptly said: "If the employe is unable to adduce sufficient evidence to show negligence on the part of the employer, it is only one of the many cases in which the plaintiff fails in his

testimony, and no mere sympathy for the unfortunate victim of an accident justifies any departure from settled rules of proof resting upon all plaintiffs.'' If the only theory or theories upon which the death of the deceased could be reasonably based pointed to the negligence charged in the declaration, we could legally hold that the negligence charged was the proximate cause of the intestate's death. A., T. & S. F. Ry. Co. v. Alsdurf, *supra*.

But there is another reason why a verdict should have been directed for appellant. The evidence shows that the same conditions and defects, if any, that existed on the night of the accident, had existed without change during the time that the deceased had worked at the elevator. With full opportunity to observe and to know the conditions around the machinery, the deceased with full knowledge of the defects, if any, continued his work without complaint, and must, therefore, under the law be held to have assumed the risk. See same authorities above cited. This principle of law applies particularly, too, to the charge that the shaft was not guarded. It may be further said, also, that the shaft was a plain smooth shaft without cog wheels, gearings, set screws or other projections, where the deceased was caught, and that the proof failed to show that it was practicable to guard or fence the shaft, and there was no statute at the time of the accident requiring such machinery to be fenced or guarded. It, therefore, does not affirmatively appear from the evidence that the defendant was guilty of negligence in not fencing or guarding the shaft.

For the foregoing reasons the judgment is reversed with a finding of facts to be recited in the judgment of this court, that the defendant was not guilty of negligence in failing to fence and guard the shaft in question, and that the intestate's death was not proximately

caused by the other acts of negligence charged, or either of them, and that the deceased assumed the risk. *Judgment reversed.*