**B. A. Nelson, Appellee, v. Jacob Tunick, Appellant.**

**Gen. No. 32,710.**

Opinion filed December 19, 1928.

JACOB G. GROSSBERG and HARRY BELL, for appellant.

JOHN GUTKNECHT and ISADORE KAPLAN, for appellee.

MR. JUSTICE RYNER delivered the opinion of the court.

The plaintiff recovered a judgment for $1,000 against the defendant in the municipal court of Chicago, in an action of tort, for damages to a stock of merchandise. The goods were stored in the basement of a building owned by the defendant. The plaintiff paid $8 per month for the use of the space. Immediately above the basement were two apartments and between them a toilet for the common use of the occupants of the two apartments. Sometime in February, 1926, the toilet, due to a temporary obstruction, overflowed and water ran through the floor onto the stock of merchandise.

The defendant brings this appeal and assigns as errors that the plaintiff failed to make proof of the

amount of damages sustained and that, upon the facts in evidence, the defendant was free from fault and liability. The goods consisted of an assortment of practically everything that can be purchased at auction sales in a large city, from heavy blasting machines down to smaller articles, such as face powder and corset stays. There is no dispute but that they were damaged by the water coming from the toilet. The plaintiff testified that the damages amounted to approximately $1,000, and that the entire stock was of a value in excess of $2,500. There appears to have been no objection interposed to this testimony. A public accountant testified that he examined the goods and that he was of the opinion that the water had damaged the goods to the extent of three-fourths of their value. This testimony was also received without objection. The plaintiff was requested by his counsel to describe the goods and give their values item by item. This the plaintiff undertook to do, but had not proceeded far when counsel for the defendant interrupted him, saying that he would admit there was merchandise there and that he did not care what the plaintiff had. At this point the court advised the plaintiff not to proceed further with this line of testimony. We do not think that the defendant is in a position now to complain that the finding of the court as to the amount of damages was based upon incompetent evidence.

On the issue as to the liability of the landlord, the plaintiff's testimony was very indefinite and largely hearsay. He saw the water coming through the ceiling of the basement and the tenants on the floor above told him it came from the toilet. He attempted to communicate by telephone with the defendant, but did not succeed. He further testified that the next day nothing had been done; that he thereupon made a complaint to the board of health; that nothing was done and after 10 days he again went to the office of the board of health, and that a day or so later "the water

was fixed.'' He also testified that the toilet in question had never leaked before. No evidence was offered on behalf of the plaintiff to show that the toilet was in anywise out of order or in need of repair. He did not profess to know, or even to conjecture, what caused it to overflow.

The defendant testified that he owned the building; that he visited the premises every day and besides had a janitor to take care of the building; that he never noticed anything wrong with any of the plumbing fixtures, and that he never received any complaints from the tenants about the particular toilet.

The janitor testified that he lived next door to the premises in question; that he visited the building every day and that none of the tenants ever complained about any fixtures being defective until one of the tenants during the month of February called his attention to the fact that the toilet in question was overflowing. He further testified that he immediately called a plumber but that before the latter arrived, which was about 10 minutes later, he removed the refuse from the toilet with a plunger; that no repairs were necessary and the plumber made none.

The plumber testified that he arrived within 10 or 15 minutes after he was called; that the toilet was then operating properly; that he made no repairs and that all of the fixtures were in perfect condition.

If we correctly interpret the testimony of the plaintiff it was that the water continued to overflow for a period of over 10 days and that finally an inspector gave an order of some kind, and a day or so later ''the water was fixed.'' He says that the inspector went upstairs and saw where the water was leaking. He asserts this, although admitting that he was not at home at the time and did not see the inspector. His story in this regard is wholly uncorroborated, highly improbable and directly controverted by the testimony of two witnesses and the facts and circumstances in

evidence. It is hardly conceivable that the tenants occupying the two apartments would have tolerated a condition such as the plaintiff testified to without making many and vigorous complaints. Likewise, we can think of no reason why a janitor should be so derelict in the performance of his duties as to permit such a condition to exist without seeing to it that the cause was removed. Finally, there is no testimony whatsoever that the toilet was out of repair or defective in any respect, while the uncontradicted testimony of the janitor and the plumber is that it was in perfect condition. They were in a position to know the facts. The plaintiff was not.

The manifest weight of the evidence supports the contentions of the defendant that the toilet was not defective or in need of repair, and that immediately upon notice of the overflowing of the water, the janitor removed the cause, which was refuse of some kind undoubtedly placed there by an occupant of one of the two apartments. Under this state of facts, the defendant was not liable and was entitled to a judgment in his favor. *Burke v. Hulett,* 216 Ill. 545. The Supreme Court there said:

"As stated in the American and English Encyclopedia of Law, (vol. 18, 2d. ed. p. 220): 'The rule laid down by the weight of authority is, that where the landlord leases separate portions of the same building to different tenants and reserves under his control those parts of the building and premises used in common by all the tenants, he is under an implied obligation to use reasonable diligence to keep in a safe condition the parts over which he so reserves control. Thus, it is held by the weight of authority that an implied duty is imposed upon the landlord to keep in repair common passageways and approaches retained under his control and used by the several tenants as the means of access to the portions of the premises demised to them, and that the landlord is liable for in-

juries received by a tenant because of the landlord's negligence in performing this duty.' The same principle is announced in *Payne v. Irvin*, 144 Ill. 482. In such case the landlord is liable for injury occasioned by his negligence in failing to keep the premises in repair, and, of course, he can only be charged with negligence for such failure after notice of the existence of the dangerous condition of the same, or after the defect has continued for a sufficient length of time to charge him with constructive notice thereof.''

The trial judge apparently took the defendant to task because in his affidavit of merits there was a denial of his ownership of the building in question and of the relationship of landlord and tenant, and yet he took the witness stand and unhesitatingly testified that he was the owner and that the plaintiff was his tenant. The affidavit, however, was not signed by the defendant but by some one else representing himself to be his duly authorized agent. It was not shown that the defendant ever saw the affidavit or had any knowledge of its contents. We think it is applying the rule of *respondeat superior* with a vengeance to enter a judgment, otherwise unwarranted, against a defendant because of the execution of an affidavit of merits by a purported agent, which is contradicted by the testimony of the defendant, without any showing that he had anything to do with the preparation or signing of it. Even if the defendant had signed the affidavit, it could be properly used only for the purpose of impeaching him, or discrediting his testimony.

The judgment of the municipal court is reversed and judgment entered here for the defendant.

*Reversed and judgment here for defendant.*

HOLDOM, P. J., and WILSON, J., concur.