Railway Express Agency, Inc., Appellee, v. William M. Ryan, Appellant.

Gen. No. 38,064.

Opinion filed February 19, 1936. Rehearing denied March 5, 1936.

WENDELL H. SHANNER, of Chicago, for appellant.

CUTTING, MOORE & SIDLEY, of Chicago, for appellee; JAMES F. OATES, JR., and C. DAGGETT HARVEY, both of Chicago, of counsel.

MR. PRESIDING JUSTICE HALL delivered the opinion of the court.

William E. Barker, an employee of the plaintiff, Railway Express Agency, Incorporated, sustained injuries as the result of falling into an elevator shaft in a building owned by the defendant, William M. Ryan. Under an award made under the provisions of the Workmen's Compensation Act of the State of Illinois, plaintiff paid Barker as such employee, the sum of

$3,000, and it is suing under section 29 of that act (Ill. State Bar Stats. 1935, ch. 48, ¶ 229), to recover the amount paid upon the theory that Barker suffered his injuries as a result of the negligence of the defendant Ryan. On the trial, the court submitted the cause to a jury, which returned a verdict in favor of plaintiff for $3,000, upon which verdict the judgment appealed from was entered. At the close of plaintiff's case, and at the close of all the evidence, defendant moved that the court instruct the jury to find the defendant not guilty, which motions were denied.

It is charged in the petition filed in the cause that the defendant owned a building located at 1407–09–11 South Michigan avenue, Chicago, which was used for manufacturing, mercantile and business purposes; that the defendant operated, maintained and controlled an elevator in the building, which was used in common by defendant, his tenants, lessees, their employees and servants, and by the public, in carrying goods and merchandise in and out of this building, and from one part of the building to another; that immediately adjacent to the building was a public alley, and that there opened into this building a door, or opening, which provided means of egress and ingress to and from the building into the alley; that the opening was protected by a door, or guard, which was operated by defendant, and which, if properly maintained, would prevent anyone from stepping into the elevator shaft at that point; that the bottom of the door, or opening, was a short distance above the level of the ground of the alley, and that there was constructed at the bottom of the door, or opening, a ledge, or sill, upon which persons stood, or used in delivering packages through the door and into the building, or elevator. It is further charged that Barker, who was a driver, employed by the plaintiff, while in the course of his employment, stopped, with his wagon, at this door, or

opening, for the purpose of collecting certain goods, and that while he was so engaged, and while in the exercise of due and reasonable care for his safety, and because of defendant's negligence in failing to safeguard this opening, he fell from this ledge into the elevator shaft, and was injured.

Barker's testimony is to the effect that on March 31, 1930, at about 1:30 or 2 o'clock in the afternoon, he drove into the alley in the rear of plaintiff's building; that the alley there runs north and south, and that he stopped on the east side of the building, which is on the east side of Michigan avenue; that he stopped the wagon right at the elevator entrance; that the elevator entrance comes up from the alley about as high as the witness's chest, where there is a ledge about two feet wide, and that the tail gate of the wagon was then even with this ledge, and left only the space of the hub between the ledge and the remainder of the wheel of the wagon; that the back of his wagon was then at the south end of the elevator ledge; that after the horses were stopped, the witness got off the seat, and went into the rear of the wagon; that he was waiting in the wagon for a man named Budd, who worked with him, and who had gone up in the elevator to collect some packages; that he left the wagon, got off on the east side of it, for the reason that the west side of the wagon was up against the wall and that he then went back and climbed into the back end of the wagon; that Budd was the man in charge of the wagon; that they had previously called at this building every afternoon for about a year, and that he did not notice whether the elevator door was open or not at the time he climbed into the wagon; that he had seen the elevator door there every day when he called; that he had never seen the elevator door open when the elevator was not there; that he was waiting in the wagon in order to take packages from Budd when he returned; that the team moved an inch or two; that he went back to the

end of the wagon and stepped over on to the ledge to see why the team had moved, and that as he turned around, he over-balanced and went down into the elevator shaft, and that he was then taken to St. Luke's Hospital and to the operating room there.

On cross-examination, this witness testified that it was no part of his duty to enter the building, and that he had not done this prior to the occurrence, and had never before been in the building; that at the time of the accident, the wagon was parallel with the east wall of the building; that it was his job to be at the rear of the wagon when the packages were delivered by Budd; that when Budd went into the building from the wagon, he, the witness, got up on this ledge, or platform, and that he did not notice at that time, whether the door to the elevator was open or shut, even though he was looking at the place where Budd climbed up on this ledge; that he looked toward this ledge when he stepped on it. The witness was shown a copy of his deposition taken in the cause on March 31, 1934, and he admitted that he had then testified that the elevator went up and down with packages while he was there, and before the accident, and that packages were placed on this ledge; that he saw them placed there when they were brought down in the elevator, and that he took them off of this ledge, and that he did not remember whether the elevator was there at this time; that the time occupied in taking these packages from this ledge was about five minutes, and that at the time he took the last package from the ledge the elevator door was open. On further cross-examination, this witness testified that the wagon remained at the point in question for from 25 to 30 minutes prior to the accident, and that the witness did not look to see whether the elevator door was open during that time, and that if he had looked, he would have seen whether the door was open, and whether the elevator platform was flush with the loading platform. On his

redirect examination by the attorney for the plaintiff, the witness testified that he over-balanced and fell the moment he stepped on this ledge, and that his purpose in stepping on the ledge was to see why the horses attached to the wagon had moved.

Frank Budd, a witness produced by plaintiff, testified to the effect that on the day in question he was employed by the plaintiff to pick up and deliver express packages in the city of Chicago; that the driver of the wagon upon which he was working, was William Barker, and that Barker had worked with the witness for about a year; that all the driver had to do was to stay in the wagon and attend to the packages as they were taken from or placed in the wagon; that the witness had charge of the wagon, and that Barker did the driving; that he and Barker had stopped at this building many times before during a period of 10 to 11 months; that when they stopped there at the time in question, the witness called for the elevator man, by calling, hammering on the door, and ringing a bell; that when he called for the elevator man at the time in question, this man came with the elevator, and that the witness then went up on the elevator to the sixth floor; that he was in the building about a half hour when he was informed that the driver had fallen into the elevator shaft; that the elevator operator did not close the elevator door when he and the witness got into the elevator before going up to the sixth floor; that the last time he saw Barker before the accident, Barker was sitting in the driver's seat; that when he, the witness, stepped on the ledge, the door was open, and that he waited until the elevator came, and he stepped on it and was taken up into the building.

Claude Stewart, a witness produced by the defendant, testified, in substance, that he was the elevator man who operated the elevator in question on the day of the accident; that the elevator was in the basement and that he received a call and brought the elevator

up to the first floor; that when he got there, he asked Budd, who was on the outside, to assist him in raising the elevator door, because the weight on it was broken and it had to be raised by hand; that he and Budd raised the elevator door, and that he and Budd got a stick and put under it to hold it up; that he and Budd then went up on the elevator to get some express matter; that while they were raising the elevator door and placing a stick under it, Barker was present, standing in the wagon, and that at that time the witness spoke to Barker; that after he left Budd at the sixth floor of the building, the elevator bell rang, and that he went down on the elevator with some parcels and that Barker was then in the alley, standing at the tail gate of the wagon, and that the door to the elevator was then open. This witness testified that he placed these parcels on the elevator ledge, or platform, and that Barker took the packages referred to and placed them in the wagon, and that then the witness took the elevator to the fourth floor.

It is the contention of the plaintiff that the defendant and his tenants invited the express company to defendant's premises for the purpose of collecting express shipments from these tenants; that Barker, as an employee of the plaintiff was an invitee; that while he was engaged in the course of his employment, and in the furtherance of plaintiff's business, he sustained the injuries complained of, as the result of the negligence of the defendant, and that it was defendant's negligence, and not his, Barker's, contributory negligence, which was the proximate cause of the injury.

In *Casey v. Adams*, 137 Ill. App. 404, suit was brought to recover damages for the death of plaintiff's intestate, caused, as claimed, by the negligence of the defendant in keeping and maintaining a doorway open and unprotected, leading into an elevator shaft, through which the plaintiff's intestate stepped and fell, thereby receiving the injuries from which he died.

The building in which the shaft was located, as was the case here, was used by tenants of the owner of a building. In that case, there was a freight elevator opening into the rear of the building, the same as in the case at bar. The decedent was a police officer, and was detailed to protect a wagon of the Wells Fargo Express Company, because of a teamsters' strike, and on the day and at the time of the accident, had been ordered to accompany a Wells Fargo two-horse covered wagon, the sides of which were closed, and the rear end of which was open. The wagon stopped at the building in question, and the wagon guard, to whom the decedent was detailed for protection, backed up to the doorway in the rear of a building to receive certain packages. As shown by the statement of the court in this case, when the wagon backed up to the building, it covered an entire doorway, and this obstruction excluded light from the doorway. When the wagon was backed up to the doorway, the decedent was in the wagon, and he was seen to step down from the wagon to the doorsill, and the next instant, he disappeared into the elevator shaft, thereby sustaining the injuries from which he died. The question arose there as to whether there was any implied or express invitation to the police officer to enter the building, and whether or not the decedent was guilty of contributory negligence. In that case, the verdict was for the defendant, upon which judgment was entered, and on appeal to this court by the plaintiff, the court affirmed the judgment of the trial court, and in its opinion, among other things, said:

"The testimony . . . shows that deceased stepped sideways and a little backward toward the door. Other evidence in the case shows that he knew nothing of the place, its conditions, construction or appliances. All the witnesses agree that it was dark and almost, if not quite, impossible to see anything inside the door. Upon these facts, about which there is no controversy,

it is impossible to conclude that deceased was exercising due care. On the contrary, the natural and common sense conclusion is that he was negligent and that his negligence contributed to the injury. . . . The evidence, in the opinion of a majority of the court, conceding to be true all evidence which supports the view of plaintiff in error, and giving him the benefit of all legitimate inferences which are to be drawn therefrom in his favor, clearly shows that the deceased was guilty of contributory negligence as a matter of law. *Jorgensen v. Johnson Chair Co.*, 169 Ill. 429; *Browne v. Siegel Cooper & Co.*, 191 id. 226; *Murray v. McLean, Admx.*, 57 Ill. 378; *Piper v. New York Central*, 156 N. Y. 224; *Brugher v. Buchtenkirch*, 167 N. Y. 153.''

In the case of *Jorgensen v. Johnson Chair Co., supra*, cited by this court with approval in *Casey v. Adams, supra*, a woman employed as a scrubwoman in a factory building, received injuries sustained by falling down an open elevator shaft in an unlighted shipping room adjoining one of the offices, in which she went, in disregard of her duties, to hunt for rags to dry the floors, when by her contract of employment, as shown by the evidence, the materials necessary for her work were to be furnished to her at her request by the watchman of the building. The trial court directed a verdict for defendant, and in affirming the judgment, this court said:

''As there was, under the evidence, no ground whatever upon which plaintiff could recover, the court properly instructed the jury to find a verdict for defendant.''

In *Murray v. McLean*, 57 Ill. 378, also cited in *Casey v. Adams, supra*, the deceased, a cooper, went to the defendant's place of business to deliver kegs, and wandered some 65 or 70 feet back from the front of the building, where were situated the office and room where persons having business with the house trans-

acted it, for assistance to help in unloading, and there fell into an unguarded elevator shaft. The court held that no invitation was shown warranting him in going to that part of the premises, and that therefore no recovery could be had.

In the case at bar, the evidence indicates that it was broad daylight at the time of the accident; also that it was no part of Barker's duty to enter or be upon the premises of the defendant. It may also be noted that Barker was not even called upon to reply and did not reply to the testimony of the witness Stewart, to the effect that while Stewart and Budd were in the act of raising the elevator door and placing a stick under it to hold it open, Barker was present, standing in the wagon, and at that time, Stewart conversed with Barker. There is only the general statement of Barker that he did not notice whether the elevator door was open or not at the time he climbed into the wagon and up on the ledge. Barker's testimony is to the effect that the ledge upon which he climbed was two feet wide. It clearly appears from the evidence that his purpose in climbing upon this ledge was to look at the team, and that he had no intention of entering the building. In view of the fact that Barker's duties did not require him to enter this building, defendant, therefore, owed him no greater duty than he owed to any stranger who might have been walking along or standing on this ledge. We are of the opinion that the verdict is contrary to the manifest weight of the evidence. The judgment entered thereon is, therefore, reversed.

*Reversed.*

HEBEL, J., and DENIS E. SULLIVAN, J., concur.